**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

**DEBRA TAYLOR JOHNSON,**

      **Plaintiff,**

**v.**                          **CASE NO.: 3:06-cv-341-J-20TEM**

**STEIN MART, INC.,**

      **Defendant.**

_____/

**PLAINTIFF'S MOTION TO COMPEL DISCOVERY**

Plaintiff Debra Taylor Johnson, through undersigned counsel and pursuant to Federal Rule of Civil Procedure 37 and Local Rule 3.04, files this Motion to Compel.

**INTRODUCTION**

Plaintiff served her consolidated Interrogatories and Requests for Production and Defendant timely answered. Exhibit A. By letter dated September 18, 2006, Plaintiff responded in detail to Defendant's objections. Exhibit B. On September 28, 2006 Defendant answered Plaintiff's letter by dropping some, but not all, of its objections. Exhibit C. Defendant's Privilege Log contains 34 email exchanges that are not protected from disclosure by attorney-client privilege or the work product doctrine. Exhibit D.

The discovery at issue in this motion are: Requests 1 (assessments of Plaintiff's job performance) 4 (internal retaliation complaints) 11 (electronic mail) 9 (investigations involving Plaintiff) and 15 (OSHA investigation); and the 34 emails listed on Defendant's Privilege Log.

Plaintiff was hired as a buyer for the retail chain Stein Mart (Defendant) in 2001. Plaintiff objected to company policies and conduct she believed to be illegal. Defendant's

activities included improper collection of markdown allowances from vendors, falsifying season codes on old inventory and improperly accounting of the value of inventory. These practices inflated the value of the company's assets.

Plaintiff started reporting the company's illegal activities to her supervisors in 2002 when she first raised the issue of falsifying season codes and improper use of markdown allowances with supervisor Celeste Wade. Once Plaintiff's objections reached the upper echelon of Defendant's management, the company started a campaign to oust her.  In the spring of 2003, after Plaintiff was moved to a new division under the direction of Barbara Hansen, Plaintiff refused Hansen's order to falsify season codes on inventory. Hansen alleged that Plaintiff had forged her name on purchasing orders. Defendant launched an investigation. During the investigation, Plaintiff told Sr. Vice President of Human Recourses Hunt Hawkins and Vice President of Loss Prevention Joe Martinolich that the investigation was motivated by her refusal to go along with the company's questionable accounting practices.  She told Hawkins she was the subject of a witch hunt. Martinolich told Plaintiff that he would investigate her allegations about improper markdown allowances. Plaintiff was eventually cleared of any wrongful conduct relating to fraudulent purchase orders. (Doc 1).

Defendant eventually manufactured a reason to fire Plaintiff—poor planning during the 2004 Christmas season—even though her supervisors signed off on the plans and there was no shortfall of inventory. Johnson was terminated on May 19, 2005. Plaintiff filed a complaint against Defendant with OSHA on May 19, 2005. Defendant's adverse actions against Plaintiff include termination, retaliatory investigations, demotion, intense scrutiny and harassment.  (Doc 1).

Plaintiff brought this lawsuit pursuant to the whistleblower protections of the Florida Private Whistleblower Act, §448.101-105, Fla. Stat., and the Corporate and Criminal Fraud Accountability Act of 2002 (CCFA, also known as Sarbanes-Oxley or "SOX"). The purpose of the Sarbanes-Oxley whistleblower protections is to encourage employees to raise corporate governance issues without fear of retaliation. The law protects employees who provide information to any federal regulatory or law enforcement agency, any Member of Congress or Congressional committee, <u>or a supervisor</u> regarding any conduct the employee reasonably believes to be a violation of Sarbanes-Oxley, any rule or regulation of the Securities and Exchange Commission, or any provision of federal law relating to fraud against shareholders.

The key issue in this case is whether Plaintiff engaged in protected activity under Sarbanes-Oxley and if so, whether there was a causal connection between this activity and Ms. Johnson's termination. Consequently Plaintiff's discovery requests focus on three main areas:  (I) investigations involving Plaintiff that reveal Plaintiff's protected activities and the nexus between them and the adverse employment actions; (II) information about Plaintiff's job performance; and (III) records maintained by Defendant. Defendant raises objections that effectively limit discovery to the last year of Plaintiff's employment.

## MEMORANDUM IN SUPPORT OF MOTION TO COMPEL DISCOVERY

### I.      INTERNAL INVESTIGATIONS OF PLAINTIFF

Plaintiff's Interrogatory and Request 9 ask Defendant to disclose all information and documents related to its investigations of Plaintiff:

**Interrogatory 9**

Describe in detail any investigation of Plaintiff undertaken by Defendant, including dates of investigation, documents examined, persons interviewed, and records made. This interrogatory includes but is not limited to

A.    Investigation of the allegations that Plaintiff made against the company and of the subject matter of her complaints.
B.    Investigation of fraudulent purchase orders.
C.    Identify with specificity the "certain complaints" described by you in ¶48 of Defendant's Answer and state whether Defendant undertook any investigation relative to the complaints.

**Defendant Response:**

Stein Mart objects to the form of this Interrogatory, as the phrase "any investigation of Plaintiff undertaken by Defendant" in this Interrogatory is inaccurate and misleading, as Stein Mart never performed an investigation of Plaintiff. In 2005, Stein Mart did investigate allegations made by Plaintiff regarding alleged improprieties regarding the use of merchandise vendor allowances and season codes.

On March 14, 2005, Plaintiff met with Jim Delfs, Stein Mart's Chief Financial Officer. During that meeting, Plaintiff alleged that she was aware of "loading" (illegally manipulating the method of collecting merchandise vendor allowances) of purchase orders in the children's department in 2001. Also, she alleged that season codes were wrongfully changed in the petites department.

On March 15, 2005, Joe Martinolich, Stein Mart's Vice President of Loss Prevention, commenced an investigation into Plaintiffs allegations. On March 17, 2005, Stein Mart Corporate Auditor Ed Flanagan and Stein Mart Associate Relations Specialist Jennifer Wellington interviewed Plaintiff regarding her allegations. The following Stein Mart employees were also interviewed: Barbara Hansen, Andy Andrews, Roseanne McLean, Melodie Pugh, Diana Weems, John Pennell, Darrell Murphy, and Celeste Wade. The investigation found that there was no evidence that Stein Mart personnel were "loading" merchandise vendor allowances. Rather, merchandise vendor allowances were collected in a permissible manner common to industry practices. Martinolich later contacted Plaintiff to conduct another interview but Plaintiff refused to cooperate with the investigation after her initial interview by Flanagan and Wellington. On May 10, 2005, Martinolich completed his investigative report, concluding that there was no evidence to support Plaintiff s allegations.

Plaintiff also alleged that, beginning in spring 2003, she was ordered by her supervisor, Barbara Hansen, a Divisional Merchandise Manager for Stein Mart, to change season codes. In addition to Plaintiff, the following Stein Mart employees were interviewed: Barbara Hansen, Andy Andrews, Roseanne McLean, Melodie Pugh, Diana Weems, and Mark Agee. Season code analysis reports were also

reviewed. The investigation found no evidence that season codes were changed improperly.

In September 2003, Hansen alleged that her signature was forged on several purchase orders. Hansen was, at that time, Plaintiff s supervisor. Martinolich also investigated those allegations. Martinolich interviewed several Stein Mart employees, including Plaintiff, and concluded that there was no proof that Plaintiff or anyone else forged Hansen's signature, and terminated his investigation into the matter.

In October 2003, Plaintiff made similar complaints regarding merchandise vendor allowances and season codes. Martinolich asked Plaintiff whether she possessed documentation supporting her allegations but she refused to provide any. Martinolich soon ceased his investigation.

**Request 9**

To the extent that they have not already been disclosed, produce all records made in connection with all investigations described by interrogatory 9, including but not limited to:

A.      Written statements of witnesses;
B.      Notes of interviews with witnesses;
C.      Tape recordings of any and all oral statements and/or interviews of witnesses;
D.      Transcriptions of any tape recordings of any and all oral statements and/or interviews of witnesses;
E.      Reports regarding the results of any and all investigations;
F.      Correspondence received from or sent to Plaintiffs;
G.      Correspondence received from or sent to Defendant's employees or agents;
H.      Correspondence received from or sent to any person other than Defendant's counsel;
I.      Documents relating to or evidencing discussions between Plaintiffs and Defendant's employees or agents;
J.      Documents, including e-mails, relating to or evidencing discussions between Defendant's employees or agents and any person other than Defendant's counsel;
K.      Documents, including e-mails, received from or sent to any person other than Defendant's counsel.

**Defendant's Response to Request for Production No.9:**

Stein Mart objects to this Request to the extent that it is vague, overbroad, unduly burdensome, and requests information that is irrelevant and not likely to lead to the discovery of admissible evidence. Furthermore, Stein Mart objects to this Request to the extent that it calls for the production of documents protected by the

attorney/client privilege and the work product doctrine. Subject to and without waiving these objections, documents responsive to these requests will be produced under separate cover, including Bates Nos. RP-01308 to RP-01659.

Defendant's answer to Interrogatory 9 disclosed three investigations involving Plaintiff.  The first was in September 2003, when Plaintiff's supervisor Barbara Hansen accused Plaintiff of forging her signature on purchase orders. Stein Mart objected to the form of Interrogatory 9 because it suggests the purchasing order investigation was an investigation *"of"* Plaintiff instead of an investigation that *included* Plaintiff.  But this is quibbling over semantics.  Defendant's answer reveals the existence of an investigation of Plaintiff.

The second investigation took place in October of 2003, during the time that Plaintiff was being investigated for allegedly forging Hansen's signature. Plaintiff told Martinolich and Hawkins that she was the victim of a witch hunt because she opposed the company's illegal activities. Defendant admits that it investigated Plaintiff's allegations, claiming that Martinolich closed his investigation after Plaintiff refused to provide written documentation.

The third investigation occurred in the spring of 2005, after Plaintiff had been reprimanded for poor job performance. Plaintiff reported the misconduct again, telling company officials that the allegations about her job performance were retribution for reporting improper accounting practices. Defendant produced selected documents from this third investigation but is withholding all documents from the first two investigations.

**A.     Plaintiff Has Demonstrated A Substantial Need For The Documents Related To The OSHA Investigation.**

6

A fourth investigation was done in response to Plaintiff's OSHA claim. Plaintiff's 15th discovery request asked Defendant to produce documents from its OSHA investigation:

**Request 15**

To the extent not already produced in response to 1, 8, 9 or other discovery request, produce for inspection or copying all electronic mail, correspondence, notes or any other written communication to or from Kevin Hyde about the allegations in Plaintiff's OSHA complaint.

**Response To Request For Production No. 15:**

Stein Mart objects to this Request to the extent that it calls for the production of documents protected by the attorney/client privilege and the work product doctrine. Subject to and without waiving this objection, Stein Mart will produce a privilege log sufficient to identify privileged documents.

Defendant only identified two documents on its Privilege Log that are related to the OSHA investigation. When Plaintiff filed her OSHA complaint Defendant made an investigation into the reason she was fired. Relying on the "facts" that they found in the investigation, Defendant made affirmative defenses to Plaintiff's claim. Defendant asserts that the OSHA investigation is off limits because the adequacy of its investigation was not pled as a defense. But Defendant's Eighth, Ninth, Tenth and Eleventh Affirmative Defenses are that Plaintiff did not engage in conduct protected by Sarbanes-Oxley, did not have a reasonable belief that Defendant engaged in any conduct suggesting fraud on the shareholders, that Defendant did not engage in illegal activity and Plaintiff's complaints were not a contributing factor in her termination. (Doc 4 at 10). Its Twelfth Affirmative Defense is that Plaintiff would have been terminated even in the absence of any protected activity. (Doc 4 at 11). Defendant's Second Affirmative Defense is that Plaintiff failed to exhaust the administrative remedies necessary to bring a lawsuit under

Sarbanes-Oxley or the Florida Private Whistleblower Act. Its Fifteenth Defense is that Plaintiff failed to give the proper notice under the Whistleblower Act.

All of these Defenses implicate the OSHA investigation into the reasons Plaintiff was fired. One issue is whether Plaintiff refused to participate in conduct she considered illegal, and if so, did she put Defendant on notice? Discovery of all documents related to the investigation, including but not limited to the witness statements and memoranda of counsel, is essential to show exactly what the corporate officials knew and when they knew it. And once they had the knowledge, what, if anything, did they do to Plaintiff? In *Brownell v. Roadway Package System, Inc.*, the court readily found the Plaintiff had a substantial need for the documents related to the employer's investigation. *Brownell v. Roadway Package System, Inc.*, 185 F.R.D. 19, 26 (N.D.N.Y. 1999). The court recognized the statements were "crucial to the determination of whether or not [the employer] can be held liable for the acts that allegedly occurred." *Id.* As in most cases, "the employer's liability, or lack thereof, . . . depends on what it knew and how it handled this knowledge." *Id.* at 22.

Courts recognize as fundamental the reality that an employer's investigative file is essential to proving most claims of employment discrimination. "[S]ubstantial need is shown where the work product material at issue is central to the substantive claims in litigation. For example, in a discrimination case where an employer defends on the basis of having made an adequate investigation of the charges, work product showing the extent of the investigation is discoverable." *Madanes v. Madanes*, 199 F.R.D. 135, 150 (S.D.N.Y. 2001). There is little practical difference between proving retaliation claims, since Plaintiff has the burden of proving that she engaged in protected conduct, an

adverse action resulted, and there is a nexus between the two. Courts have not distinguished cases depending on whether the employer's action is at issue by virtue of its defense or the employee's burden of proof.

Defense counsel may have directed the investigation in anticipation of litigation, but it was also for the purpose of finding out whether Defendant violated any law involving fraud against the shareholders. In this circumstance Plaintiff has a substantial need for documents related to the OSHA investigation, including memoranda of counsel.

**B.      Plaintiff's Requests for Production of Investigation Documents are Not Vague, Overbroad or Burdensome**

Defendant's vagueness, overbreadth and burdensomeness objections are simply frivolous. The burden is on the party asserting overbreadth and undue burdensomeness objections to provide factual support for those assertions. *Cliffstar Corp. v. Sunsweet Growers*, Inc., 218 F.R.D. 65 (W.D.N.Y. 2003) (holding that to sustain objections based on overbreadth and burdensomeness a party cannot rely on conclusory assertions but must provide specifics). Defendant has failed thus far to put forth any such support for these objections.

Even considering the merits, however, Defendant's objections fail.  There is absolutely nothing overbroad or burdensome about a request for documents that requires Defendant to produce documents made in the course of an investigation about fraudulent purchase orders, or in response to Plaintiff's assertion that she was being retaliated against for opposing illegal activity. This is a finite set of documents that were created during a finite and short period of time.  Defendant admits that in September of 2003 Plaintiff was a part of an investigation into allegedly forged purchase orders. Defendant

admits that just one month later, in October of 2003, Plaintiff told company officials about season code changing and markdown manipulation, and a brief investigation followed.

The accusation of forgery is one of the acts of retaliation that is the subject of this lawsuit. Plaintiff contends that her supervisor, Barbara Hansen, accused her of forging her signature on purchasing orders in retaliation for refusing to falsify season codes. For Defendant to assert that the forgery investigation is off limits because it has no relevance is absurd.  Likewise, Plaintiff is entitled to everything Defendant has about the October 2003 investigation. To prevail in this case, Plaintiff must show that she engaged in protected activities by opposing and refusing to participate in company practices that she believed were illegal.  Defendant admits that Plaintiff raised the season code falsifications and vendor markdown allowances in 2003, that it was known by company officials and that an investigation occurred. This goes to the very heart of Plaintiff's case.

**C.     Documents Pertaining to Defendant's Investigations are Not Protected by the Attorney-Client Privilege or the Work Product Doctrine.**

It is the burden of the party seeking to invoke the attorney-client privilege and work product doctrine to establish that these protections attach to the documents over which these protections are being asserted.  *Abdallah v. Coca-Cola Co.*, 2000 WL 33249254 (N.D.Ga.).  This showing by the party seeking to invoke the protections of the attorney-client privilege and the work product doctrine must be made on a specific, document-by-document basis.  *In Re Grand Jury Subpoena*, 831 F.2d 225, 227 (11th Cir. 1987).  Defendant does exactly the opposite, objecting to production of documents from all three investigations on the basis attorney-client privilege and the work product

doctrine. Defendant's Privilege Log does not identify any documents dated before April 21, 2005. Defendant can not go back in time to throw a vague blanket of privilege over everything having to do with Plaintiff.

Defendant's lead investigator and head of security, Joe Martinolich, admittedly investigated Plaintiff three times. Plaintiff must receive his interview notes, reports, correspondence and other documents that are typically found in an investigative file. They are not listed on the Privilege Log. There is a statement at the bottom of the Privilege Log which states: *"Various documents such as routine correspondence, emails, witness interview memoranda, and attorney notes prepared by counsel for Defendant or Defendant's employees at the request of counsel for Defendant are being withheld under the attorney-client privilege and/or work product doctrine."* Exhibit D. Rule 26(b)(5) Fed. R Civ. P. requires a party withholding documents to identify the specific documents it claims are privileged and sufficiently describe them to allow other parties to assess the applicability of the privilege. The responding party asserting privilege or work product protections must provide the propounding party with a privilege log containing the date of the document, the name of its author, the name of its recipient, the names of all people given copies of the document, the subject of the documents and the privileges asserted. *EEOC v. Safeway Store, Inc*., 2002 U.S. Dist. LEXIS 25200 (ND. Cal. Sept. 16, 2002); *Bankers Sec. Ins. Co. v. Symons,* 889 So. 2d 93, 95 (Fla. Dist. Ct. App. 2004) (the privilege log requires, at minimum, identification of the sender, recipients, title or type, date and subject matter).

The Southern District of Florida has supplemented Federal rule 26(B)(5) with Local Rule 26.1(G)(3)(b), requiring the objecting party to provide the following information in a privilege log:

> (A) For documents: (1) the type of document; (2) general subject matter of the document; (3) the date of the document; (4) such other information as is sufficient to identify the document for a subpoena duces tecum, including, where appropriate, the author of the document, the addressee of the document, and, where not apparent, the relationship of the author and addressee to each other;
>
> (B) For oral communications: (1) the name of the person making the communication and the names of persons present while the communication was made and, where not apparent, the relationship of the persons present to the person making the communication; (2) the date and the place of communication; (3) the general subject matter of the communication.

Where, as here, the rule is violated, the privilege may be waived. *See TIG Ins. Corp. of Am. v. Johnson*, 799 So. 2d 339, 341-42 (Fla. 4th DCA 2001); *rev. denied 821 So. 2d 304 (Fla. 2002).*

Defendant's Privilege Log raises more questions about Defendant's investigation of Plaintiff's claims. It contains email communications that are not protected by attorney-client privilege or work product doctrine.

### 1. Email communications before Plaintiff was fired

There are ten emails between Defense counsel Kevin Hyde and Defendant "regarding case status" before Plaintiff was even fired. Defendant has made no showing that these documents are protected.  In fact, the email exchanges were occurring in May of 2005, at the same time that Defendant was investigating Plaintiff for the third time. Plaintiff is entitled to all information that Defendant used or relied on during its third investigation, which ultimately resulted in her termination.

The Privilege Log begins with fourteen undated emails between defense counsel Kevin Hyde and various company officials. Plaintiff is unaware of any electronic mail software that omits the date and time that emails were sent. It is improbable that these emails are unable to be dated. The earliest dated document is an email exchange between Hyde and Hawkins from April 21, 2005. At this point Plaintiff had objected to Defendant's business practices for two years.  She had yet to file an administrative charge or a lawsuit. She was still an employee.  Hyde's participation in the termination and its aftermath do not create an automatic presumption of privilege. Passing investigatory materials through the hands of an attorney does not insulate the documents from discovery.  *Resolution Trust Corp. v. Diamond*, 773 F. Supp. 597 (S.D.N.Y. 1991) (attorney-client privilege does not shield documents merely because they were transferred or routed through an attorney).  Documents created as a result of a company's ordinary course of business that would have been created notwithstanding litigation are not covered by work product.  *Barfoot v. Boeing Co.*, 184 F.R.D. 642 (N.D. Ala. 1999).  The central focus is on the circumstances that gave rise to the production of the documents, not whether the individual who created them was an attorney. *Allen v. Chicago Transit Authority*, 198 F.R.D. 495 (N.D. Ill. 2001).

> If materials are produced in the ordinary and regular course of a discovery opponent's business, and not to prepare for litigation, they are outside the scope of the work product doctrine.  Accordingly, even if litigation is imminent, there is no work product immunity for documents prepared in the ordinary course of business rather than for litigation purposes…
>
> As for "anticipation of litigation," courts have made clear that, because litigation can be anticipated at the time almost any incident occurs, a "substantial and significant threat of litigation" is required before a discovery opponent's anticipation will be considered a reasonable and justifiable motivation for production of a document. . . .  The fact that litigation ensues or a party retains an

attorney, initiates an investigation, or engages in negotiations over a claim, is not dispositive on the issue of whether litigation was anticipated.

*Id.* at 500.

The *Allen* court's analysis appears to be universal. Defendant had an obligation to gather facts with or without the involvement of in-house counsel. *Long v. Anderson University*, 204 F.R.D. 129, 136 (S.D. Ind. 2001) (documents related to an internal investigation are not protected by attorney work product "simply because a company's internal investigation is co-existent with a present or anticipated lawsuit that is the same subject matter of the litigation." *Id* at 136.). See also *Resolution Trust Corp. v. Diamond*, 773 F. Supp. 597 (S.D.N.Y. 1991) (attorney-client privilege does not shield documents merely because they were transferred or routed through an attorney).

## 2.      Email communications after Plaintiff filed her administrative charge

There are nine emails between Hyde and defendant "regarding case status" after Plaintiff filed her administrative charge with OSHA and before she filed her Complaint in this Court on April 13, 2006.  Two of the undated emails refer to employee interviews with an OSHA investigator. Plaintiff was fired on May 19, 2005 and filed an administrative complaint with OSHA the same day. But the existence of a government investigation does not immunize the investigative documents from discovery, even if Defendant had been notified that the Plaintiff's charge had merit and was likely to result in litigation.  See *EEOC. v. Commonwealth Edison*, 119 F.R.D. 394, 395-396 (N.D. Ill 1988) (holding sixteen memoranda prepared by defendant's EEO administrator related to investigation of employee's complaint of discrimination discoverable and not protected by the work product doctrine even though the EEOC had indicated prior to the creation of the documents at issue that the employee's charge might have merit); *Guzzino v.*

*Felterman*, 174 F.R.D. 59, 63 (W.D. La. 1997) (simply because there was eventually an investigation by securities regulators and more than 100 civil lawsuits does not cloak documents regarding internal investigation with work product protection because the internal investigation was conducted in the ordinary course of business and to prepare for the securities regulators' investigation).

Plaintiff's retaliation claims under SOX and the Florida Private Whistleblower's Act are analogous to employment discrimination cases, where the courts uniformly find that internal investigations are not protected and compel their production. For instance, in *Miller v. Federal Express Corp.*, the court noted that an employer's investigation of internal discrimination and harassment claims are "as much for adjusting employee relations in the ordinary course of business as for preparing for anticipated litigation." *Miller v. Federal Express Corp.*, 186 F.R.D. 376, 387 (W.D. Tenn. 1999).  This was true even though the employer had instructed everyone from whom it took a statement that the investigation was being launched in anticipation of litigation.  *Id.*  The court held that the investigatory work was actually in anticipation of litigation until after the plaintiff filed her civil rights complaint.  *Id.* at 387-88.  Thus, the employer was ordered to turn over e-mails, interoffice memos, reports, handwritten notes and all other documents concerning defendant's internal investigation.  *Id.* at 386.

Defendant failed to meet its burden of establishing the existence of privilege. The United States Supreme Court has recognized that the work product doctrine "is an intensely practical one, grounded in the realities of litigation in our adversary system." *United States v. Nobles*, 422 U.S. 225, 239 (1975); *see also Worthington v. Endee*, 177 F.R.D. 113, 116 (N.D.N.Y. 1998) (the work product privilege "is restricted by common

sense and the practicalities of litigation."). One of those realities in most employment discrimination and retaliation actions is that the plaintiff simply cannot prove her case without access to the employer's investigative files.

## II.     Assessments of Plaintiff's Job Performance

This case is ultimately about why Plaintiff lost her job. Plaintiff contends she was fired because she engaged in protected conduct; Defendant says Plaintiff was fired for poor performance. Plaintiff must have access to all information bearing on her job performance. But Defendant raised boilerplate objections to Plaintiff's discovery request numbers 1 and 11.

Interrogatory and Request 1 require Defendant to identify its electronic databases and produce electronic data about Plaintiff:

### Interrogatory 1

Identify by name and subject matter all the electronic databases maintained by the company. This interrogatory seeks electronic databases regardless of subject matter. The accompanying request for production seeks production only of databases that deal with employment matters and is much narrower in scope.

### Response To Interrogatory No.1:

| Name | Subject Matter |
|------|----------------|
| Domino | Electronic mail |
| DB2 | General |
| 1senes | Accounting, human resources department |
| Microstrategy | Inventory data |
| E3 | Replenishment data |
| Microsoft Office | Various applications |

### Request 1

Please produce all electronic databases that Defendant maintains or has maintained from January 1, 2001 to January 1, 2006, that contain information about Deborah Taylor Johnson, concerning any employment data, including but not limited to:

A.     Employment applications;
B.     Performance evaluations;
C.     Pay stubs;
D.     Injury/accident reports;
E.     Disciplinary actions
F.     Termination forms;
G.     Electronic mail;
H.     E3 evaluations and data;
I.     Jobs held;
J.     Recommendations for promotion, demotion and transfer.

This request includes databases that archive information from the computer programs used by Plaintiff to do her job as a planner and buyer, including but not limited to inventory and financial reports.

**Response To Request For Production No.1:**

Stein Mart objects to this Request to the extent that it is overbroad, unduly burdensome, and requests information that is irrelevant and not likely to lead to the discovery of admissible evidence. Likewise, Stein Mart objects to this Request to the extent that it asks Stein Mart to "produce" the databases, as that would require Stein Mart to duplicate every database, which would entail Stein Mart incurring an unreasonable, unduly burdensome amount of time, effort, and expense.

Stein Mart also objects to this Request to the extent that it requests information used by Plaintiff "to do her job as a planner and buyer" as vague.

Subject to and without waiving these objections, Stein Mart will produce Plaintiffs entire personnel file, which contains documents responsive to subrequests A, B, D, E, F, I, and J above under separate cover, including Bates Nos. RP-OOOOI to RP-00640.


A.       **Production of Electronic Data about Plaintiff's Employment Is Not**

**Vague, Unduly Burdensome, Overbroad or Irrelevant**

In response to Interrogatory 1 Defendant identified several databases used by the company.  Defendant objected to Request 1 because the phrase *"computer programs*

*used by Plaintiff to do her job"* is vague, despite having just made a list of databases retained by the company. Defendant also objected because the Request appeared to ask for production of entire databases.  In a follow-up letter to Defendant, Plaintiff clarified the information and records sought:   data specific to Plaintiff that is stored in the computer programs Plaintiff used in the course of performing her duties as a planner or buyer. Exhibit B.

Instead of responding to Plaintiff's Request for specific documents (A through J), Defendant objected and then produced selected documents—what it calls Plaintiff's personnel file.  Courts have held that answering interrogatories despite a stated objection waives the objection. See *Athridge v. Aetna Cas. and Sur. Co.*, 184 F.R.D. 181, 190 (D.D.C. 1998) (Asserting a relevance objection, then proceeding to agree to produce "relevant, non-privileged" documents "[s]ubject to and without waiving" that objection, serves only to obscure potentially discoverable information and provides no mechanism for either plaintiffs or the Court to review defendant's decisions.)  *Skelton Co. v. Goldsmith*, 49 F.R.D. 128 (SDNY 1969) (Answering in spite of ("without waiving") an objection has been held to waive the objection in federal court).

But the inventory and financial records were withheld, along with emails, pay stubs and E3 evaluations.  The E3 system is of particular importance here. E3 is a computer program that helps forecast replenishment of products and stores. Plaintiff did not do her job in a vacuum.  During the months when Plaintiff's performance allegedly declined, there were problems with the E3 system that Plaintiff and her supervisors and colleagues were trying to correct.  The E3 program also did its own evaluations of the job performance of its planners. This is an objective source of feedback about Plaintiff's job

performance. Defendant does not describe how producing relevant documents from this electronic database is unduly burdensome. Federal Rule of Civil Procedure 26(a)(1)(B) specifically states "a party must, without awaiting a discovery request, provide to the other parties…data compilations…that the disclosing party may use to support its claims or defenses."  The form of production is governed by Fed. R. Civ. P. 34, that requires "documents" including "data compilations" be produced as they are kept in the usual course of business or organized to respond to specific requests. Plaintiff's request will yield a finite set of documents that were created during a four-year period of time.  As its answer to Interrogatory 1 reveals, Defendant relies on organized and searchable databases. Defendant has not met its burden and has waived its objection by disclosing selected documents.

### B.      Defendant Has No Basis to Withhold Plaintiff's Electronic Mail

Request 11 and Subrequest G of Request for Production 1, above, seek the production of electronic mail to, from or about Plaintiff.

### Request 11

To the extent not already produced in response to 1, 8, 9 or other discovery request, produce for inspection or copying all electronic mail, correspondence, notes or any other written communication to or from Kevin Hyde, Hunt Hawkins, Joe Martinolich, Ginny McClaren, Jennifer Wellington, Mike Fisher, Ed Flanagan, Andy Andrews, Gwen Manto, Barbara Hansen, Jim Delfs and Jay Stein concerning Deborah Johnson, from March 1, 2001 to date.

### Response To Request 11:

Stein Mart objects to this Request to the extent that it is vague, overbroad, unduly burdensome, and requests information that is irrelevant and not likely to lead to the discovery of admissible evidence. Furthermore, Stein Mart objects to this Request to the extent that it calls for the production of documents protected by the attorney/client privilege and the work product doctrine.

Defendant withdrew all of its objections to Request 11 except for attorney-client privilege. Exhibit C. Defendant turned over paper copies of a limited number of emails about Plaintiff during her last year of employment, when Defendant alleges that her job performance declined. This is nothing more than cherry picking negative information about Plaintiff to support Defendant's claim that Plaintiff was fired because she was no longer a good employee. Plaintiff's request is not limited to Plaintiff's last year of employment; it covers the four years she was employed by Defendant. This kind of selective disclosure is prohibited by the Federal Rules of Civil Procedure.

## III.    Records Maintained by Defendant

### A.    Internal Retaliation or Discrimination Complaints

**Request 4**

Please produce all documents relating to each oral or written complaint of discrimination or retaliation since January 1, 2000, including:

A.    Complaints made to an administrative agency such as the Securities and Exchange Commission, Florida Commission on Human Relations, Equal Employment Opportunity Commission, Occupational Safety and Health Administration.

B.    Complaints made internally within the corporate structure, including but not limited to complaints or reports made to any "confidential contact" or hotline established to satisfy the requirements of 15 U.S.C. 78f (m)(4).

C.    For each lawsuit filed in federal or state court against the company for discrimination and retaliation, produce the complaint and the document that terminated the litigation (if any), whether settlement or decision.

This request is limited to Defendant's corporate headquarters and Florida stores.

**Response To Request For Production No.4:**

Stein Mart objects to this Request to the extent that it is vague, overbroad, unduly burdensome, and requests information that is irrelevant and not likely to lead to the discovery of admissible evidence. Specifically, Stein Mart objects to the production of any information related to charges of discrimination or lawsuits involving the same as Plaintiff has not alleged any cause of action for discrimination. Stein Mart has not had any complaint, charge, or lawsuit filed

against it for violations of the Sarbanes-Oxley Act prior to the charge and lawsuit filed by Plaintiff. Notwithstanding this objection, Stein Mart produces documents relating to the following charges of discrimination or lawsuits: (1) *Wolfinger v. Stein Mart,* EEOC Charge Number 151A10593; (2) *Mays v. Stein Mart,* EEOC Charge Numbers 15E 99 0350, 15E AO 0280; Mays v. Stein Mart, Case Number 3:02-cv-820-J-HTS; United States District Court for the Middle District of Florida; (3) *Trudy Eissler v. Stein Mart,* FCHR Charge Number 2003746; (4) *Ursel L. Klimke v. Stein Mart,* EEOC Charge Number 151A200193; (5) *Schnetta Henry v. Stein Mart,* EEOC Charge Numbers 150-A3-00129; *Schnetta Henry v. Stein Mart,* Case Number 3:03-cv-359-J-32HTS; United States District Court for the Middle District of Florida. A copy of these documents will be produced under separate cover, including Bates Nos. RP-00785-00785 and 01660 to RP-01747. Stein Mart objects to the production of the settlement agreements in *Klimke and Henr.* See *Walker* v. *Prudential Property and Casualty Insurance Company,* 286 F.3d 1270, 1279 (11thCir. 2002). *Mays* was decided by judicial decision. *Eissler* and *Wolfinger* were decided by administrative decision.

Stein Mart has not had any calls to its "confidential contact" or hotline and therefore has no documents to produce. Furthermore, Stein Mart objects to this Request to the extent that it calls for the production of documents protected by the attorney/client privilege and the work product doctrine.

Stein Mart waives no objections by producing the documents herein.

Section 301 of SOX requires employers' audit committees to establish a process by which employees can anonymously or confidentially submit concerns about accounting or financial practices. The purpose of the confidential contact or "hotline" requirement is to shield employees from retaliation. There was at least one call to Defendant's confidential hotline, because Plaintiff and her husband had telephone calls and meetings with Jim Delfs, who told them he was the confidential contact. Plaintiff eventually discovered that Delfs was not the confidential contact, and that Delfs disclosed her allegations to company officials who had the authority to fire her. Defendant objected to the part of Request 4 that asked for production of internal complaints of retaliation and discrimination, including any calls made to the company's hotline. Although Defendant said it has not had any calls to the confidential contact or hotline, it then objected on the

basis of attorney-client privilege. This kind of answer hides the ball and leaves Plaintiff wondering whether there are no documents responsive to the request, or that documents exist but are privileged.

### III.   CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court issue an Order compelling Defendant to produce documents in its custody or control that are responsive to Requests 1 (assessments of Plaintiff's job performance) 4 (internal retaliation complaints) , 11 (electronic mail) 9 (three investigations involving Plaintiff) and 15 (OSHA investigation); and the 34 emails listed on Defendant's Privilege Log.

**CERTIFICATE OF GOOD FAITH ATTEMPT TO RESOLVE**

**DISCOVERY ISSUES**

In compliance with Local Rule 3.01(g) Counsel for Plaintiff has conferred with counsel for the Defendant in a good faith effort to resolve these discovery disputes but the parties could not agree on resolution of the issues.


*Andrea L. Reino*
Andrea L. Reino
Florida Bar Number 427233

Richard E. Johnson
Florida Bar Number 858323

LAW OFFICES OF RICHARD E.
JOHNSON
314 West Jefferson Street
Tallahassee, Florida 32301
850/425-1997 Telephone
850/561-0836 Facsimile

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 18th, 2006, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to the following: Kevin E. Hyde, Esq., and Ernst A. Bell, Esq., Foley & Lardner, 1 Independent Drive, Suite 1300, Jacksonville, FL 32202-5017 .

*Andrea L. Reino*
Andrea L. Reino