UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DEBRA TAYLOR JOHNSON,

        Plaintiff,

vs.                                                          Case No.  3:06-cv-341-J-33TEM

STEIN MART, INC.,

        Defendant.
_____/

**ORDER**

This cause comes before the Court pursuant to Defendant's Motion for Summary Judgment (Doc. #39) filed on March 15, 2007. Johnson filed a Plaintiff's Response to Defendant's Statement of Undisputed Facts in Support of Its Motion for Summary Judgment (Doc. #56) on April 5, 2007. Stein Mart, with leave of the Court, filed a Reply to Plaintiff's Response (Doc. # 74) on June 13, 2007. Upon review of the Motion for Summary Judgment, the Response, and the Reply, this Court finds that for the reasons stated below the Motion for Summary Judgment should be granted.

**I.    STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56©).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude grant of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Mize v.

Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (citing Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).

"When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995) (citing Celotex, 477 U.S. at 324). If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. Shotz v. City of Plantation, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, the court should not grant summary judgment. Samples *ex rel.* Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988) (citing Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau, 835 F.2d 855, 856 (11th Cir. 1988)).

## II.     BACKGROUND

Johnson went to work at Stein Mart's corporate headquarters on April 23, 2001. (Doc. #39 ¶ 4.) Stein Mart hired Johnson as a buyer in the Boy's Clothing Department. (Id.) In December 2002, Johnson was promoted to be a buyer in the Moderate Petite Department. (Id. at ¶5.) She

worked in this capacity until October 2003, when she became a Planner. (Id. at ¶ 7.) Johnson states that she first began complaining internally about Stein Mart's practices in Spring 2003. (Id. at ¶ 21.) Johnson objected to three company practices: (1) the collection of markdown allowances from vendors, (2) the changing of season codes on older inventory, and (3) the accounting for the value of inventory. (Id. at ¶ 20.) Johnson complained that the markdown allowances were misallocated between vendors or specific goods and would not be accurately reflected on the company's financial statements. (Id. at ¶ 22-23.) Johnson also complained that she was directed in early fall 2003 to change the season codes on certain merchandise, and she considered this change to improperly represent the age of the inventory. (Id. at ¶ 24.)

In September 2003, there was an investigation in Johnson's department over alleged forged purchase orders. (Id. at ¶ 29.) Johnson was interviewed in connection with this investigation, and during the course of her interview, she brought her complaints to the attention of Joe Martinolich, Vice-President of Loss Prevention. (Id. at ¶ 30.) Martinolich investigated Johnson's complaints, but concluded there was no evidence of any improper dealings. (Id. at ¶ 32.) Johnson was never counseled or disciplined in connection with the forged purchase orders investigation, and the investigation concluded that there was no evidence of any forged purchase orders. (Id. at ¶ 29.)

In October 2003, Johnson was laterally moved to a Planner position. (Id. at ¶ 7.) She retained the same pay, benefits, bonus calculations, and opportunities for advancement. (Id. at ¶ 9.) Johnson alleges she was not given any training for the position, but Stein Mart counters that not only did she receive training, but Johnson's daily diary reflected scheduled training. (Id. at ¶ 8.) Regardless, Johnson performed as a Planner in the fragrance, watch, and bath and body departments; her duties were to plan purchases to ensure stores had sufficient merchandise inventory. (Id. at ¶

9.) Over a year after Johnson became a Planner, in November 2004, Johnson's supervisor, Ginny McClaren, Division Planning Manager, was informed by Jennifer Mauritz, a Buyer, that several store managers were reporting low inventories in fragrances. (Id. at ¶ 11.) In response to this situation, McClaren and Johnson reviewed a recap of the fragrance purchases, prepared a new purchase plan and ordered $384,5878.95 in new fragrances. (Id. at ¶ 12-13.) McClaren discussed this incident with Johnson, and she gave Johnson a written performance counseling on December 1, 2004. (Id. at ¶ 14.) Johnson disagreed that her actions contributed to the low fragrance inventory. (Id. at ¶ 14.) The written performance counseling stated that Johnson was expected to develop plans to better monitor merchandise purchasing. (Id. at Ex. D.)

Johnson received a performance evaluation on February 11, 2005. (Id. at ¶ 15.) Johnson was given a score of 2.46, below the 3.0 necessary to achieve an acceptable review of "Meets the Standard." (Id.) Following this review, Johnson received a "Final Warning" which notified her that her performance must improve significantly within 90 days, or she would risk further disciplinary action. (Id. at Ex. D.) During this 90 day period, Johnson was directed to meet with her supervisors at least every 30 days to discuss her performance and ways to improve. (Id. at ¶ 17.) Johnson met with Laurie Brooks, her current supervisor at the time, on March 15, 2005, and then again on April 14, 2005. (Id.) At each meeting, Johnson was informed that her performance was not improving enough to retain her job. (Id.)

On March 14, 2005, Johnson and her husband met with Jim Delfs, Stein Mart's Chief Financial Officer. (Id. at ¶ 34.) Johnson brought her complaints about the three questioned practices to Delfs' attention, and she also stated that she felt she was being retaliated against for reporting what she believed to be violations. (Id.) She requested that Delfs investigate her claims. (Id.)

Delfs informed Johnson that her complaints would be investigated, and he asked Martinolich to look into Johnson's allegations. (Id. at ¶ 35.) Martinolich concluded his investigation and tendered his final report on May 10, 2005, in which he determined that there was no evidence to support Johnson's allegations of wrongdoing. (Id. at Ex. H.) Johnson was terminated on May 19, 2005, after it was determined the she had not shown any substantial improvement after issuance of the Final Warning. (Id. at ¶ 18.)

On May 23, 2005, Johnson filed a complaint against Stein Mart with the Occupational Safety and Health Administration. (Id. at Ex. B.) She "alleged [she was] discharged in retaliation for reporting fraudulent business practices that may have impacted [Stein Mart] shareholders." (Id.) The OSHA administrator determined that "there [was] no reasonable cause to believe that [Stein Mart] violated [Sarbanes-Oxley]" and that "[n]o evidence exist[ed] to support [Johnson's] contention that her alleged protected activity was a factor in the decision to terminate her employment." (Id.) Johnson subsequently filed this Complaint on April 13, 2006.

### III.   ANALYSIS

####    A.   Count I - Sarbanes-Oxley Whistleblower Claim

#####        1.   Statute of Limitations

An employer "may [not] discharge, demote, suspend, threaten, harass, or in any other manner discriminate against an employee" for engaging in a protected activity under the Sarbanes-Oxley whistleblower protection provision. 18 U.S.C. § 1514A(a) (2006). An employee bringing an action under § 1514A is required to commence his claim no later than ninety days after the violation occurred. 18 U.S.C. § 1514A(b)(2)(D). This statute of limitations runs from each discrete act of retaliation and is absolute. Cf. Ledbetter v. Goodyear Tire & Rubber Co., No. 05-1074, 2007 U.S.

Lexis 6295 (U.S. May 29, 2007) (holding that where employee alleges a series of EEOC violations, the 180-day statute of limitations runs from each discrete act); Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002). Johnson filed her claim with OSHA on May 23, 2005. Thus any discrete adverse employment action that occurred before February 19, 2005, ninety days prior to Johnson's OSHA claim, is time barred and not actionable. The Court does recognize that Johnson may use "prior acts as background evidence in support of a timely claim," but the acts themselves are not actionable. Morgan, 536 U.S. at 113. The emphasis must be on whether there is a present violation, not on a mere continuity of practices. See id. At 112. Therefore, Johnson's termination is the only adverse employment action, which is an alleged violation of § 1514A, that is actionable.

### 2.     **Plaintiff Engaged in a Protected Activity**

Stein Mart argues that Johnson has failed to establish a prima facie case of retaliation. To establish a prima facie case under § 1514A, an employee "must show by a preponderance of the evidence that (1) he engaged in protected activity; (2) the employer knew of the protected activity; (3) he suffered an unfavorable personnel action; and (4) circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action." Bozeman v. Per-Se Techs., Inc., 456 F. Supp. 2d 1282, 1358 (N.D. Ga. 2006). Stein Mart concedes Johnson can establish the second and third elements of her case, that Stein Mart was aware Johnson reported conduct she believed was illegal and that she suffered an unfavorable personnel action by being terminated in May 2005. But, Stein Mart argues that Johnson did not engage in a protected activity, namely that she did not have a reasonable belief that the company practices she complained of were illegal.

Sarbanes-Oxley protects employees for reporting "any conduct which the employee reasonably believes constitutes a violation of [securities law]." 18 U.S.C. § 1514A(a)(1). An

employee need not prove an actual violation of a law, but only that she reasonably believed the company practice violated securities laws or regulations. Bozeman, 456 F. Supp. 2d at 1359; Collins v. Beazer Homes USA, Inc., 334 F. Supp. 2d 1365, 1376 (N.D. Ga. 2004). Stein Mart contends that Johnson's belief that the three company practices were illegal was not reasonable because she has no accounting background and has no knowledge of Stein Mart's accounting practices. Also, Stein Mart states that its vendor markdown allowances and season code changes were in line with general industry practices. (Doc. #39 Ex. C at 2.) The Court finds this argument without merit, since Stein Mart demonstrated that it understood the seriousness of Johnson's complaints when it investigated her allegations. (Doc. #39 ¶¶ 30-32, 34-38.) While Stein Mart later concluded that Johnson's allegations lacked merit, its investigation shows that Stein Mart understood the nature of her allegations. Cf. Collins, 334 F. Supp. 2d at 1377-78 (finding that company's investigation of plaintiff's complaints demonstrated it recognized the complaints fell within zone of protected activity designated by Sarbanes-Oxley). Clearly Stein Mart considered Johnson's beliefs to be reasonable, at least enough to warrant an internal investigation. Therefore, the Court finds that Johnson did engage in a protected activity.

### 3.      Protected Activity not a Contributing Factor

Stein Mart next contends that Johnson's protected activity was not a contributing factor in the decision to terminate her employment. Under the statutory framework, a plaintiff must show that "circumstances exist to suggest that the protected activity was a contributing factor to the unfavorable action." Bozeman, 456 F. Supp. 2d at 1358. Proximity in time may be sufficient to establish that the protected activity was a contributing factor. Collins, 334 F. Supp. 2d at 1379. Stein Mart contends that the temporal proximity in this case is not sufficient to establish any link

between Johnson's protected activity and the adverse employment action. On this point the Court must agree. Johnson's first reported complaint that alerted Stein Mart to the alleged illegal practices was in October 2003. Johnson was not terminated until May 2005, twenty months later. Temporal proximity, as used to establish causation, must be very close. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). Periods as short as three to four months have been held to be insufficient to create causation. Higdon v. Jackson, 393 F.3d 1211, 1221 (11th Cir. 2004) (finding three month period did not create link between protected activity and alleged retaliation); Wascura v. City of S. Miami, 257 F.3d 1238, 1248 (11th Cir. 2001) (holding three and one-half months not enough to show causation). Additionally, the Supreme Court has expressly rejected that a period of twenty months can establish causation by itself. Clark County Sch. Dist., 532 U.S. at 274. Johnson's second reported complaint did not occur until March 15, 2005, one month after she was given the "Final Warning" and was aware her employment was in jeopardy if she did not improve her performance. Under these circumstances, the Court finds that the temporal link not only does not establish causation, but shows that Johnson's protected activity was not a contributing factor in her termination.

### 4.  **Plaintiff Terminated for Non-Retaliatory Reasons**

Stein Mart finally argues that even if Johnson could establish her prima facie case, it has proven by clear and convincing evidence that it would have terminated Johnson in any event. An employer may successfully defend against a claim of retaliation by demonstrating by clear and convincing evidence that it would have taken the same unfavorable personnel action in the absence of the protected activity. 18 U.S.C. § 1514A (b)(2)©); 49 U.S.C. § 42121(b); Collins, 334 F. Supp. 2d at 1380. Stein Mart has demonstrated that it terminated Johnson's employment because of job

performance, not because of her complaints.  Stein Mart's evidence shows that Johnson's supervisors were not satisfied with her work due to her mishandling of the company's fragrance purchases for the 2004 holiday season.  (Doc. #39 Ex. D at 2-4.)  Stein Mart states that Johnson failed to adequately order sufficient merchandise for the holiday season, resulting in the company expending nearly $400,000 to correct the errors.  (Doc. #39 ¶ 11-13.)   Johnson was given a performance review and counseling to improve her performance.  (Doc. #39 ¶ 14.)  A follow up performance evaluation on February 11, 2005 revealed that Johnson was not meeting the expectations of her superiors, and she was given a "Final Warning" on February 14, 2005 to improve her performance or risk further disciplinary action.  (Doc. #39 Ex. D at 11-17.)  After that time, Johnson met with her supervisors regularly "to discuss ways to improve her performance and monitor her progress."  (Doc. #39 ¶ 17.)  After ninety days it was determined that Johnson's performance had not improved sufficiently, and the decision was made to terminate her.  (Doc. #39 ¶ 18.)

"[T]he Court's role is not that of an employer's super-personnel department.  Consequently, 'it is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not motivated [by . . .some . . . impermissible factor].'" Bozeman, 456 F. Supp. 2d at 1351-52.  The reasons advanced by Stein Mart for terminating Johnson's employment are convincingly unrelated to Johnson's complaints.  Johnson's failure to perform up to Stein Mart's standards is well documented.  While the Court is obligated to view the Plaintiff's evidence in the light most favorable to her, Johnson has failed to create a disputed issue of fact as to whether she would have been terminated regardless of her protected activity.  Johnson has only offered her own conclusions and interpretations of the facts of this case, which are not sufficient to question Stein

Mart's personnel decision. "It must be emphasized that an employer has the right to make an employment decision for a multitude of reasons: It can be for the right reason, for the wrong reason, or for no reason. The employer is only prohibited from taking an adverse job action for an impermissible reason." Id. at 1352. The Court finds that Stein Mart would have terminated Johnson's employment even in the absence of her protected activity, and summary judgment should be granted on this count.

        **B.**        **Count Two - Florida Whistleblower Act Claim**

The Florida Whistle-Blower Act protects employees from employer retaliation if the employee had "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which *is* in violation of a law, rule, or regulation." § 448.102(3), Fla. Stat. (2007) (emphasis added). To prevail on a claim under the FWA, an employee must prove an actual violation of a law, rule, or regulation. White v. Purdue Pharma, Inc., 369 F. Supp. 2d 1335, 1337 (M.D. Fla. 2005); see also Douberley v. Burger King Corp., No. 8:06-cv-1844-T-17EAJ, 2007 U.S. Dist. LEXIS 29302, at *10-11 (M.D. Fla. Apr. 20, 2007); Lawson v. Dollar Gen. Corp., No. 8:04-cv-2366-T-17TBM, 2006 U.S. Dist. LEXIS 47082, at *7 (M.D. Fla. July 12, 2006). Johnson has alleged that "Defendant terminated Plaintiff in retaliation for Plaintiff's refusal to manipulate season codes and her complaints about activities that Plaintiff *believed* were designed to illegally inflate the value of Defendant's inventory." (Doc. #1 ¶110 (emphasis added).) Johnson states that the complaints she made to Stein Mart were "on the three company activities she *considered* illegal." (Doc. #56 at 25 (emphasis added).) Johnson has not offered proof that Stein Mart actually violated a law, rule, or regulation. She has only alleged that "[she] believed that the three business practices were unethical and possibly illegal." (Doc. #56 ¶ 53.) Stein Mart's internal investigation and

-10-

OSHA's investigation revealed no violation of Sarbanes-Oxley. Furthermore, Stein Mart's practices are generally accepted industry practices, and not a violation of any law or regulation. (Doc. #39 Ex. C.) Johnson has offered nothing to refute this aside from her own conclusory allegations. Therefore, summary judgment on the Florida Whistle-Blower's claim must be granted. Accordingly, it is now

        **ORDERED, ADJUDGED,** and **DECREED:**

Defendants' Motion for Summary Judgment (Doc. #39) is hereby **GRANTED**. The Clerk of the Court shall enter judgment accordingly and close the file.

        **DONE** and **ORDERED** in Chambers in Jacksonville, Florida, this <u>20th</u> day of June, 2007.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel of Record